UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SABRINA DEVITA,

                  Plaintiff,

         -v-                                  22-CV-9826-LTS

MOUNT SINAI HOSPITAL, MARDISA
SAMSON RAMOS, and JEFF COHEN,

                  Defendants.

---

MEMORANDUM ORDER

      Plaintiff Sabrina Devita ("Plaintiff" or "Ms. Devita") brings this employment discrimination action against Mount Sinai Hospital ("MSH"), and her former supervisors, Mardisa Samson Ramos ("Ms. Samson"), and Jeff Cohen ("Mr. Cohen" and together, "Defendants"), asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, New York Executive Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §8-101 et seq. ("NYCHRL"). (Docket entry no. 58, Second Amended Complaint ("SAC").)

      Defendants collectively move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the SAC, arguing that Ms. Devita was lawfully terminated for repeatedly refusing to get the COVID-19 vaccine, as mandated by state law and MSH's policy. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367. The Court has reviewed carefully the parties' submissions in connection with the motion and, for the following reasons, grants Defendants' motion as to all federal claims, and declines to exercise its supplemental jurisdiction over the analogous state and city claims.

BACKGROUND[1]

Ms. Devita is a practicing Roman Catholic woman who was employed as a Registered Nurse at MSH from March 2017 until December 8, 2021.  (SAC ¶ 17.)

On or about July 30, 2021, Ms. Devita received an automated email informing her that, because she had failed to provide to MSH documentary evidence of her COVID-19 vaccine, she would have to undergo weekly PCR testing beginning on September 21, 2021.  (Id. ¶ 19.) On or about August 16, 2021, she submitted a request for a medical exemption from MSH's vaccination policy due to a "preexisting, debilitating heart condition," and included a certification from her cardiologist.  (Id. ¶ 20.)  Plaintiff alleges that, because she suffered from "episodes of recurrent pre-syncope, palpitations, sinus tachycardia, and Post Orthostatic Tachycardia Syndrome," her cardiologist certified that, if inoculated against COVID-19, she would experience "worsening" of her symptoms.  (Id. ¶ 21.)  On the same day, Plaintiff received an email confirming receipt of her medical exemption request.  (Id. ¶ 22.)

Eight days later, on or about August 24, 2021, Ms. Devita submitted a second medical exemption request—this time due to her pregnancy—through a letter from her obstetrician-gynecologist, who recommended that she wait until after her delivery date before receiving the COVID-19 vaccine.  (Id. ¶¶ 23-24.)

On August 16, 2021, the same day on which Ms. Devita submitted her first medical exemption request, Governor Andrew Cuomo announced that all healthcare workers in

---

[1] The following facts are drawn primarily from Plaintiff's SAC, the well-pleaded allegations of which are taken as true for purposes of this motion practice.

New York State would be required to be vaccinated against COVID-19 by September 27, 2021.[2] On or about August 26, 2021, two days after Ms. Devita submitted her second medical exemption request, the New York State Department of Health adopted Section 2.61 (the "Statewide Mandate").  (SAC ¶ 42.)  Although Plaintiff does not reference a specific date in the SAC, she alleges that, consistent with the Statewide Mandate, MSH adopted a policy requiring its employees to be vaccinated against COVID-19 by September 27, 2021.  (Id. ¶¶ 41-42.) Section 2.61 requires hospitals to "continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021."  10 N.Y. COMP. CODES R. & REGS. tit. 10 § 2.61 (a)(1), (c) (effective August 26, 2021) (repealed October 4, 2023).  It defines "personnel" as "all personnel employed" by a hospital, "including but not limited to employees, members of the medical and nursing staff," "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  Id. § 2.61 (a)(2).  Section 2.61 does not contain a religious exemption.  See generally id.  Plaintiff neglects to make factual averments in her Second Amended Complaint about any of her duties as a Registered Nurse, and whether she occupied a personnel or patient-facing role—and was therefore within the ambit of Section 2.61. In her opposition to Defendants' motion to dismiss, however, Plaintiff concedes that she was covered by the Section 2.61 mandate.  (Pl. Opp. at 13.)

        Ms. Devita claims that, "shortly after" she submitted her two medical exemption requests, Defendant Samson, a "unit manager" and Plaintiff's direct supervisor at MSH, "began to consistently and pervasively mock and ridicule Plaintiff for making repeated requests and

---

[2]  Press Release, New York State, Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers (August 16, 2021), https://www.governor.ny.gov/news/governor-cuomo-announces-covid-19-vaccination-mandate-healthcare-workers.

inquiries" regarding her exemption requests.  (Id. ¶¶ 13, 25.)  Ms. Samson allegedly "harassed and annoyed" Ms. Devita by yelling that Plaintiff "should quit if you didn't get vaccinated."  (Id. ¶ 26.)  On August 31, 2021, Ms. Samson "yelled at Plaintiff in front of a worker," that "she should resign."  (Id. ¶ 27.)  Plaintiff alleges that she was so "embarrassed, humiliated and degraded" as a result that "she cried extensively and had to be comforted by another person."  (Id. ¶ 28.)

On or about September 1, 2021, MSH denied Plaintiff's pregnancy-based medical exemption request, "without much explanation or requesting further medical information."  (Id. ¶ 29.)  On the same day, Ms. Devita requested a status update on her other medical exemption request but received no response.  (Id. ¶ 30.)  The following day, Ms. Devita asked MSH for "references to clinical studies" showing that getting a COVID-19 vaccine during pregnancy was not harmful but received no response.  (Id. ¶ 31.)  On or about September 9, 2021, after her heart condition-based medical exemption request was denied,[3] Ms. Devita requested from Defendant Samson what she characterizes as a "reasonable accommodation, such as telework, chart audit or short-term transfer to a job within" the COVID-19 Unit, which she alleges had previously been granted to other pregnant nurses.  (Id. ¶ 32.)  Plaintiff alleges that Ms. Samson ignored her requests, and that MSH never engaged in an "interactive process" regarding the denial of her pregnancy-based request.  (Id. ¶¶ 33-34.)

On or about September 15, 2021, Ms. Devita claims that she was "forced to take leave" under the Family and Medical Leave Act ("FMLA"), as a direct consequence of the "intimidating, hostile and abusive work environment" created by Defendants.  (Id. ¶ 37.)  MSH approved her FMLA leave request.  (Id.)  While on leave, and with the Statewide Mandate's

---

[3]   Plaintiff does not provide a date for the denial of this exemption request.

September 27, 2021, vaccination deadline fast approaching, Ms. Devita submitted a request on September 16 for an exemption based on her "sincerely held religious beliefs, rooted in the Scriptures, that preclude her from accepting any one of the three currently available [COVID-19] vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines." (Id. ¶ 38.) She wrote a personal statement encapsulating her request, which concluded, "[t]herefore, I am requesting for an exemption from this directive so that my conscience may remain clear before God." (Id. ¶ 39.) Defendant acknowledged receipt of this request on the same day. (Id. ¶ 38.)

On September 27, 2021, Ms. Samson informed Plaintiff that she could not return to work because she remained unvaccinated. (Id. ¶ 45.) That same day, however, Plaintiff spoke with Defendant Cohen, Vice President of Labor Relations and Human Resources at MSH, who told her that she could return to work while her medical and religious exemptions were pending,[4] so long as she submitted to weekly COVID-19 testing. (Id. ¶¶ 15, 47.) Plaintiff submitted the appropriate forms for weekly testing the next day, and she alleges that "it was also determined" that she could return to work on October 15, 2021. (Id. ¶ 48.) On October 8, however, Ms. Devita tested positive for COVID-19, informed MSH of her diagnosis, and accordingly did not return to work on October 15. (Id. ¶ 49.)

On October 18, 2021, Plaintiff submitted another request for accommodation, such as telework, due to her "sincerely held religious beliefs." (Id. ¶ 50.) On November 2, Ms. Devita returned to work at MSH, where she claims Defendant Samson "continued her campaign of harassment" by "mocking and ridiculing" her. (Id. ¶ 51.) On or about November 20,

---

[4] The SAC does not explain why Plaintiff's medical exemption request(s) would still have been pending, given that Plaintiff previously alleged in the pleading that they were denied earlier in September.

Defendants Samson and Cohen told Plaintiff that she could not return to work unless she was vaccinated, because her medical and religious exemption requests were denied.  (Id. ¶¶ 52-53.) On November 23, Defendant MSH placed Plaintiff on unpaid administrative leave.  (Id. ¶ 60.) That same day, Plaintiff emailed a letter to MSH in response to having been placed on unpaid leave, stating that she refused to resign.  She wrote, in relevant part: "I am writing this letter to let this committee know that I do not agree with this mandate."  (Id. ¶ 60.)  On December 6, Plaintiff's then-attorneys send a demand letter to MSH, ordering it to cease and desist bullying and discriminating against Plaintiff, and to reinstate her as a Registered Nurse.  (Id. ¶ 62; see also id. Ex. B.)  On December 9, Defendant Samson informed Plaintiff by email that she had been terminated from her employment, effective December 8.  (Id. ¶ 64.)

On November 28, 2021, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination by Defendant MSH. (Id. ¶ 7.)  She received her right-to-sue letter from the EEOC on September 29, 2022, and filed the instant action within 90 days thereof.  (Id. ¶¶ 9-10.)  Ms. Devita pleads nine claims.[5]  She alleges discrimination and retaliation based on her gender/pregnancy, religion, and disability, as well as a hostile work environment.  Defendants jointly move to dismiss all counts; their principal argument is that Plaintiff has failed to plead facts sufficient to support any of her claims, and that this suit is indistinguishable from others that have sought to indirectly challenge

---

[5] The pleading is not a model of clarity but, generally, Plaintiff first asserts Title VII causes of action based on gender/pregnancy discrimination and retaliation, and religious discrimination/retaliation, and then disability discrimination/failure to accommodate under the Americans with Disabilities Act, followed by hostile work environment claims premised on remarks concerning the bases asserted for the exemption applications, all against Defendant MSH only.  She then asserts state and local law causes of action against all of the Defendants based on similar theories of discrimination, failure to accommodate, hostile work environment and aiding and abetting thereof.  (See generally SAC ¶¶ 93-105.)

Section 2.61 or hospital vaccination policies based on theories of discrimination and retaliation, all of which have been dismissed.

DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor. See Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

Employment Discrimination Claims

Defendants move to dismiss Plaintiff's employment discrimination claims under Title VII and the ADA, on the ground that SAC fails to allege specific, non-conclusory facts sufficient to raise an inference of discriminatory motivation. For the reasons that follow, the Court dismisses all of Plaintiff's discrimination claims.

*Sex and Pregnancy Discrimination Under Title VII*

Plaintiff claims that Defendant MSH discriminated against her because of her pregnancy and gender, as well as in denying her request for reasonable accommodation of her pregnancy without explanation. (See, e.g., SAC ¶¶ 23-29; see also docket entry no. 65 ("Pl. Opp.") at 3-9.) Defendants argue that Plaintiff does no more than allege that other unidentified

pregnant nurses received at unspecified times the type of accommodation she was denied and therefore fails to plausibly allege facts suggesting an inference of discriminatory motivation. (Def. Mem. at 9-11; SAC ¶ 32.)

Title VII prohibits an employer from discriminating "against any individual . . . because of such individual's . . . religion [or] sex." 42 U.S.C. § 2000e-2(a)(1). Title VII, as amended by the Pregnancy Discrimination Act, defines the phrases "because of sex" and "on the basis of sex" to include "because of or on the basis of pregnancy . . . or related medical conditions." 42 U.S.C.S. § 2000e(k). At this stage of Title VII litigation, plaintiff must allege (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and (4) facts suggesting an inference of discriminatory motivation in imposing the adverse action. Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015). Defendants only dispute the sufficiency of Plaintiff's allegations as to the fourth element.

The SAC fails to allege facts sufficient to support an inference of discriminatory intent based on Ms. Devita's sex or pregnancy status. In fact, there is no allegation connecting any specific conduct of Defendants MSH, Samson, or Cohen, singly or in combination, to her sex or pregnancy status. The sole allegation that Plaintiff proffers in support of her pregnancy discrimination claim is conclusory. (See Pl. Opp. at 7 (citing SAC ¶¶ 23-26).) In Paragraph 23, Plaintiff alleges that, shortly after she submitted her pregnancy-based medical exemption request, "Defendant Samson began to consistently and pervasively mock and ridicule Plaintiff for making repeated requests and inquiries regarding her medical exemption to the COVID19 vaccination and/or for reasonable accommodations due to her medical condition and pregnancy." (SAC ¶ 23.) In her unsworn memorandum of law in opposition to Defendant's motion to

dismiss, this single allegation is characterized as alleging that "Defendants [] sometimes overtly referr[ed] to Plaintiff's pregnancy."  (Pl. Opp. at 7.)  Even if that were an accurate characterization of the allegation, however, these non-specific references do not constitute "invidious comments," or other such degrading remarks made in relation to Plaintiff's protected characteristic—her pregnancy status.  Littlejohn, 795 F.3d 297 at 312.  Indeed, the SAC specifically alleges that the offending remarks concerned her inquiries about her requests for vaccine exemptions, not the underlying medical conditions themselves.  See, e.g., Kajoshaj v. N.Y. City Dep't of Educ., 543 F. App'x 11, 14 (2d Cir. 2013) (summary order) (affirming dismissal of complaint where, "although plaintiffs repeatedly assert[ed] that defendants" took certain actions "because of" plaintiffs' religion and national origin, plaintiffs "[did] not, for instance, assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner").

       Nor does the SAC allege "more favorable treatment of employees not in [Plaintiff's] protected group."  Id.  Plaintiff generally claims that MSH had previously granted the types of accommodations that she requested to other, unidentified, pregnant nurses.  Taken as true, that allegation undercuts, rather than bolsters, any inference of discriminatory animus.  See D'Cunha v. Northwell Health Sys., No. 22-CV-0988-MKV, 2023 WL 2266520, at *4 (S.D.N.Y. Feb. 28, 2023) (dismissing a Title VII discrimination claim and holding that plaintiff's allegation that "some women were granted accommodations for their pregnancies *undermines*—not supports—an inference of sex-based discrimination."), aff'd, No. 23-476-CV, 2023 WL 7986441 (2d Cir. 2023) (summary order); see also Moore v. Kingsbrook Jewish Med. Ctr., No. 11-CV-3625-MKB, 2013 WL 3968748, at *10 (E.D.N.Y. July 30, 2013) (holding that the plaintiff's

discrimination claim was discredited by the fact that similarly situated employees in his protected class were not terminated).

Plaintiff relies heavily, in support of this claim and others, on the temporal proximity between the disclosure of pregnancy (through her exemption request), and the subsequent denial of the exemption request and of later accommodation requests. (Pl. Opp. at 7-8.) That proximity alone, however, cannot transform her claim of discriminatory denial of relief from the COVID-19 vaccination requirement into a plausible one. See Anderson v. City of N.Y., No. 22-CV-3990-NSR, 2024 WL 183103, at *7 (S.D.N.Y. Jan. 17, 2024) (holding that temporal proximity was undercut by the "far more plausible explanation for Plaintiff's termination: her failure to receive the COVID-19 vaccine as required by her employer"). Indeed, the SAC lacks even the minimal factual support required at the motion to dismiss stage for her contention that Plaintiff was placed on unpaid leave and ultimately terminated due to her sex or pregnancy status, rather than due her status as an unvaccinated registered nurse. See D'Cunha v. Northwell Health Sys., No. 23-476-CV, 2023 WL 7986441, at *4 (2d Cir. 2023) (summary order). Therefore, Defendants' motion is granted as to Plaintiff's Title VII sex-based discrimination claim.

*Religious Discrimination Under Title VII*

Plaintiff next claims that Defendants discriminated against her based on her religion by denying her an accommodation that would have changed her duties such that the legal vaccine mandate would not have applied to her, such as by permitting her to telework. (Pl. Opp. at 10-13.) Defendants contend that Plaintiff's religious discrimination fails because she has failed to raise an inference of discriminatory motive based on her religion, and, in any event, that any accommodation would, under the circumstance, have imposed an undue hardship on the

employer by forcing it to violate governing state law or completely change Plaintiff's job.[6]  (Def. Mem. at 12-14.)

To survive a motion to dismiss on Title VII claim for religious discrimination, a plaintiff must show that: (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement.  D'Cunha, 2023 WL 7986441, at *2 (summary order) (citing Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)).  However, an employer does not violate Title VII if it can demonstrate that the prospective accommodation in lieu of compliance would have caused the employer to suffer undue hardship.  See Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002).  While undue hardship is an affirmative defense, it may be raised on a pre-answer motion to dismiss when the defense appears on the face of the complaint.  See Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd., 620 F.3d 137, 145 (2d Cir. 2010).  After previously endorsing a "more than a de minimis" standard, the Supreme Court has since clarified that undue hardship is "shown when a burden is substantial in the overall context of an employer's business."  Groff v. DeJoy, 600 U.S. 447, 468 (2023).

Here, Defendants do not contest that Plaintiff held a bona fide sincere religious belief that conflicted with MSH's vaccination requirement, that Plaintiff informed them of this belief, or that she was terminated for failure to comply with the vaccination requirement.  (See

---

[6]   There are no factual allegations in the SAC suggesting that Plaintiff wishes to proceed on a disparate treatment theory, as opposed to a failure to accommodate theory, in support of her Title VII religious discrimination claim.  (See generally SAC.)  More to the point, despite Defendants' discussion of both theories in their moving papers, Plaintiff only discusses the latter and its corresponding case law in her opposition.  (Pl. Opp. at 10-13.)  Accordingly, the Court treats Plaintiff's claim as one for failure to accommodate her religion.

generally Def. Mem. at 12-14.)  The issue before the Court is whether Defendants' proffered affirmative defense—that they would have assumed an undue hardship in granting Plaintiff's requested accommodation for telework—appears on the face of Plaintiff's complaint.  Plaintiff emphasizes that she sought an accommodation, rather than a blanket exemption, from the Statewide Mandate.  (Pl. Opp. at 12-13.)  In so doing, she focuses on the Second Circuit's language in a clarifying addendum to its recent opinion in We the Patriots USA, Inc. v. Hochul. See 17 F.4th 266 (2d Cir. 2021), opinion clarified, 17 F.4th 368 (2d Cir. 2021).  There, the Second Circuit held that while Title VII cannot require covered entities such as hospitals to provide a blanket religious exemption against vaccination, Section 2.61, on its face, does not prohibit "an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule." We The Patriots, 17 F.4th 368, 370 (2d Cir. 2021) (citation omitted) (emphasis in original).  Even so, the Second Circuit reiterated that Title VII does not require an employer to grant an accommodation that would cause an "undue hardship."  See id.; see also 42 U.S.C. § 2000e(j).

Plaintiff asserts that, had Defendants granted her accommodation request for telework, she would have been removed from Section 2.61's definition of "personnel," and that Defendants have not shown that doing so would have imposed an "undue hardship."  (Pl. Opp. at 12-13.)  Going a step further, Plaintiff asks this Court not to entertain Defendants' "extra-pleading" representations as to what would have been an "undue hardship," and focus instead on Plaintiff's allegations that Defendant MSH "refused to engage in the interactive process" when it received Plaintiff's request for accommodation.  (Id. at 13.)  Defendants note that Plaintiff, who at all times during her employment at MSH worked as a Registered Nurse,

cannot explain how she could have performed her job requirements through telework. (Def. Mem. at 14.)

The Court agrees that, at the prima facie stage, the inquiry is limited to the four corners of Plaintiff's complaint. That said, Plaintiff's requested work assignment change to telemedicine is necessarily one that would have eliminated contact with patients and other hospital personnel, and she does not elaborate how she could have performed any of the essential functions of her job as a Registered Nurse under such circumstances, or how MSH could have accommodated her without assigning others to perform her duties. (See SAC ¶ 50; Pl. Opp. at 12-13.) The law is clear that a reasonable accommodation under Title VII "can never involve the elimination of an essential function of a job," which would necessarily constitute an undue hardship. See Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003); cf. Grimes v. New York & Presbyterian Hosp., No. 23-CV-652-MKV, 2024 WL 816208, at *6 (S.D.N.Y. Feb. 26, 2024) (permitting a Title VII religious discrimination claim to proceed in the vaccination mandate context where plaintiff had requested, and was denied, a telework accommodation when plaintiff was already a remote employee). The Court concludes that, based on Plaintiff's allegations—in a twice-amended complaint—that granting a telework accommodation to a Registered Nurse would have imposed an undue hardship on Defendants. Therefore, Plaintiff's Title VII religious discrimination claim must be dismissed.

Separately, to the extent Plaintiff seeks to advance an independent cause of action based on Defendant's alleged failure to "engaged in [an] interactive process," (see Pl. Opp. at 13), the Court finds that no such obligation existed here because Plaintiff has not demonstrated that there was any accommodation that would not have imposed an undue hardship. See, e.g., Shahid-Ikhlas v. New York And Presbyterian Hosp., Inc., No. 22-CV-10643-GHW-SDA, 2023

WL 3628151, at *6 (S.D.N.Y. May 5, 2023) ("Thus, where, as here, the only possible accommodation [of remote work] would cause undue hardship, an employer does not violate Title VII by failing to engage in an interactive process.").

*Disability Discrimination under the ADA*

Plaintiff next contends that Defendants discriminated against her in part due to her heart condition, in violation of the ADA. (Pl. Opp. at 16-17.) As with her earlier claims, she argues that Defendants' failure to engage in an "interactive process" regarding her medical exemption request, along with their failure to provide any explanation for denying the requests, gives rise to an inference of disability discrimination. (Id.) Defendants claim that Plaintiff has failed to advance any non-conclusory allegations that she was disabled within the meaning of the ADA. (Def. Mem. at 6-9.)

The ADA makes it unlawful for an employer to discriminate against an employee on the basis of disability and requires an employer to "afford a reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer." 42 U.S.C. § 12112(b)(5)(A); Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015). The ADA defines disability to include a "physical or mental impairment that substantially limits one or more major life activities . . . [or] being regarded as having such an impairment." 42 U.S.C. §12102(1). At this stage a plaintiff must plausibly allege that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) that action was imposed because of her disability. Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015).

Plaintiff has failed to state a viable ADA claim because she does not plausibly allege that she is disabled within the meaning of the ADA or was perceived to be so by Defendant MSH.  Plaintiff requested a medical exemption from the COVID-19 vaccine requirement, alleging that she suffers from a "pre-existing, debilitating heart condition."  (SAC ¶¶ 20–21.)  Plaintiff does not allege facts to show that her purported medical conditions substantially limited any major life function or activity such as the operation of a major bodily function, or "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §1630.2(i).  Nor does she supply any facts that would plausibly suggest that she was regarded by Defendants as having such an impairment under the meaning of the ADA.  Significantly, with or without the existence or disclosure of a disability, she performed the essential functions of a Registered Nurse for four years prior to the implementation of MSH's COVID-19 vaccination policy and the adoption of the Statewide Mandate, which also cuts against the plausibility of her disability claim.  Therefore, Plaintiff's ADA discrimination claim must be dismissed.

<u>Retaliation Under Title VII and the ADA</u>

Plaintiff intermittently references retaliation within her Title VII and ADA discrimination claims in the SAC.  (<u>See generally</u> SAC ¶¶ 93-103.)  The parties address retaliation in their briefs as if it were a standalone count in the SAC, and the Court addresses it here.  (<u>See, e.g.</u>, Def. Mem. at 15-18; Pl. Opp. at 17-24.)  Plaintiff contends that her "retaliation claim arises mainly out of her termination" and that, because the termination occurred fifteen days after she wrote a letter to MSH and two days after her attorneys sent MSH a demand letter, she has stated a plausible claim for retaliation.  (Pl. Opp. at 21.)  To state a Title VII retaliation claim, a plaintiff must plausibly allege (1) that she participated in a protected activity; (2) that the

defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  Shultz v. Congregation Shearith Isreal of City of N.Y., 867 F.3d 298, 309 (2d Cir. 2017).  To overcome a motion to dismiss, a plaintiff must plausibly allege that the adverse action would not have occurred in the absence of retaliatory motive—that is, that the protected activity was a "but-for cause" of the adverse action.  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90-91 (2d Cir. 2015).

        Plaintiff's claim fails for the simple reason that she cannot meet the requisite causation element.  Section 2.61 was controlling law when Plaintiff made all but two of her exemption requests; the first was made on the day the Statewide Mandate was announced, and the second was made two days before it went into effect.  The Mandate was in place when Plaintiff and her then-counsel sent their respective November 23 and December 6 letters to MSH that closely preceded her December 8 termination.  Had Plaintiff or her then-counsel not sent their letters, MSH still "would have terminated her or face[d] legal liability."  Moore v. Montefiore Med. Ctr., No. 22-CV-10242-ER, 2023 WL 7280476, at *7 (S.D.N.Y. Nov. 3, 2023); see also docket entry no. 69 ("Lim Decl.") Ex. 1 (Nov. 20, 2021, Notification Email) (explaining that if Plaintiff was not vaccinated by November 28, 2021, MSH "must begin the termination process").  Therefore, Plaintiff's retaliation claim must be dismissed because she cannot demonstrate that her delivery of these letters, or making her earlier exemption requests, was a "but-for cause of termination."  Serrano v. N.Y. State Dep't of Environ. Conserv., 714 F. App'x 90, 92 (2d Cir. 2018) (summary order).

Hostile Work Environment Under Title VII and the ADA

Plaintiff next alleges that she suffered severe and pervasive harassment and was subjected to a hostile work environment on account of her religion, pregnancy/gender, and purported disability. (SAC ¶¶ 100, 105.) Defendants argue that her allegations are general, conclusory, and non-specific, and that the interactions Plaintiff describes in the SAC are no more than isolated, rude, and insensitive remarks, which are inadequate to support her claim. (Def. Mem. at 19-20.)

To state a hostile work environment claim, a plaintiff must plead facts that suggest her workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Littlejohn v. City of N.Y., 795 F.3d 297, 320-21 (2d Cir. 2015). To meet this threshold, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (citation omitted). It is "axiomatic" that, in order to show a hostile work environment, the plaintiff "must demonstrate that the conduct occurred because of" her protected characteristic. Id. A hostile work environment claim encompasses both objective and subjective components. Plaintiff must allege facts sufficient to show that the conduct in question: (1) is objectively severe or pervasive, creating an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives to be hostile or abusive; and (3) creates such an environment because of the plaintiff's protected class or characteristic. See Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001). To "determin[e] whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the

circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Littlejohn, 795 F.3d at 321 (quotation marks and citation omitted).

Plaintiff has not pleaded facts demonstrating that the alleged hostile environment, even assuming that there was one, occurred because of a protected characteristic. There are only two non-conclusory, specific allegations proffered in support of Plaintiff's hostile work environment claim: (1) that, on "several occasions, Defendant Samson purposely harassed and annoyed Plaintiff by yelling to the Plaintiff that 'you should quit if you didn't get vaccinated,'" and (2) on August 31, 2021, "after mocking her requests for medical exemptions to the COVID-19 vaccine, Defendant Samson yelled at Plaintiff in front of a coworker," that "she should resign," which "embarrassed, humiliated and degraded Plaintiff to such an extent that she cried extensively and had to be comforted another person." (SAC ¶¶ 26-28.)

These allegations, singly or in combination, simply do not support an inference that Plaintiff's "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Littlejohn, 795 F.3d at 320-21. Nor are there any facts in the complaint sufficient to support an inference that Defendants' conduct was motivated by Plaintiff's protected characteristics—pregnancy status/gender, religion, or purported disability—which is an essential requirement to proceed on a hostile work environment claim.[7] Alfano, 294

---

[7] Plaintiff contends in her opposition brief that, during the August 31, 2021 incident, Defendant Samson yelled at her in front of a coworker, "after mocking her requests for a medical exemption" and "disclosing Plaintiff's disability." (Pl. Opp. at 14 (citing SAC ¶ 27).) The SAC, however, makes no mention of such a disclosure. (SAC ¶ 27.)

F.3d at 373.  Plaintiff makes no allegations that the friction she experienced was based on any of these characteristics.  The Court notes that Plaintiff had an opportunity to twice amend her complaint, and yet most of her supporting allegations for this claim improperly and prominently feature legal terms—"severe," "pervasive," "abusive," or "hostile"—rather than supply specific factual averments that could plausibly render those terms applicable.  (See, e.g., SAC ¶¶ 25, 35, 37.)  Accordingly, Plaintiff has failed to state a hostile work environment claim under Title VII or the ADA.

Supplemental Jurisdiction of State and Local Claims

Because Plaintiff has failed to state viable federal discrimination, retaliation, and hostile work environment claims, the Court declines to exercise supplemental jurisdiction of Plaintiff's NYSHRL and NYCHRL claims (Counts Six, Seven, Eight, and Nine), pursuant to 28 U.S.C. section 1367(c).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is granted.  This Memorandum Order resolves docket entry no. 60.  The Clerk is Court is respectfully directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

Dated: June 18, 2024
       New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge